UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HEATHER R.,[1]

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

**DECISION AND ORDER**

1:19-CV-01555 EAW

## INTRODUCTION

Represented by counsel, Plaintiff Heather R. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for child disability benefits and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 7; Dkt. 9), and Plaintiff's reply (Dkt. 10). For the reasons discussed below, Plaintiff's motion (Dkt. 7) is granted in part, the Commissioner's motion (Dkt. 9) is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

---

[1] In accordance with this Court's November 18, 2020 Standing Order regarding the identification of non-government parties in social security decisions, available at https://www.nywd.uscourts.gov/standing-orders-and-district-plans, this Decision and Order will identify Plaintiff using only Plaintiff's first name and last initial.

- 1 -

**BACKGROUND**

Plaintiff protectively filed her applications for child disability benefits and SSI on September 14, 2016. (Dkt. 6 at 14, 181-83, 184-89). In her applications, Plaintiff alleged disability beginning November 29, 2006. (*Id.* at 14,181, 184). Plaintiff's applications were initially denied on October 27, 2016. (*Id.* at 14, 93-94). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Mary Mattimore in Buffalo, New York, on October 23, 2018. (*Id.* at 14, 34-64). On November 19, 2018, the ALJ issued an unfavorable decision. (*Id.* at 14-28). Plaintiff requested Appeals Council review; her request was denied on September 19, 2019, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10). This action followed.

**LEGAL STANDARD**

**I.     District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation

omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.  Disability Determination

The regulations permit the payment of disabled child's insurance benefits on a parent's earning record if the claimant was 18 years old or older and has a disability that began before turning 22 years old. *See* 20 CFR § 404.350(a)(5). An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings"). *Id*. §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff, who was born on November 29, 1988, had not attained the age of 22 as of November 29, 2006, the alleged onset date. (Dkt. 6 at 16). At step one, the

ALJ determined that Plaintiff had not engaged in substantial gainful work activity since November 29, 2006, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: arthralgias, migraine headaches, myofascial pain, cervicalgia, obesity, sacroiliitis, radiculopathy lumbosacral region, cervical spondylosis without myelopathy, spondylosis without myelopathy, lumbar, lumbar degenerative changes, facet hypertrophy, and minimal disc bulge L4-5. (*Id.*). The ALJ further found that Plaintiff's medically determinable impairments of hypertension, anemia, mild tricuspid regurgitation, left atrial enlargement, anxiety, and loss of memory were non-severe. (*Id.* at 17).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 18). The ALJ particularly considered the criteria of Listings 1.02, 1.04, 11.02, 1.00Q, 3.001, and 4.00F in reaching her conclusion. (*Id.* at 18-19).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work, with the following limitations:

> [Plaintiff] can occasionally push and pull bilaterally, stoop, kneel, crouch and crawl; never climb ladders, ramps, ropes or scaffolds; no exposure to bright flashing lights (no outdoor work); can work in a moderate noise environment as defined in Appendix D of the Selected Characteristics of Occupations; no exposure to hazardous machines, unprotected heights or vibrations. She can understand, remember and carry out simple routine work and make simple workplace decisions not at production rate pace (assembly line) pace.

(*Id.* at 19). At step four, the ALJ found that Plaintiff could not perform past relevant work. (*Id.* at 26).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of housekeeper officer cleaner, clerical assistant, and general cashier. (*Id.* at 27-28). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 28).

## II.     The RFC Finding is Not Supported by Substantial Evidence

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id*. However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:

> An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion. . . . This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 U.S. Dist. LEXIS 20030, at *36-37 (D. Conn. Dec. 1, 2017) (citations omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence."

*Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).

Plaintiff contends that the ALJ assessed her RFC in the absence of any relevant opinion evidence. Other than the evaluation by the consultative examiner, John Schwab, D.O., there is no opinion evidence in the record.

Dr. Schwab examined Plaintiff on October 17, 2016. (Dkt. 6 at 423-26). Dr. Schwab noted that Plaintiff advised that she had injured her back 15 years earlier and had constant back pain that she rated at a 9/10. (*Id.* at 423). Plaintiff informed Dr. Schwab that she had had MRIs in the past, one which showed evidence of degenerative disc disease and one with normal results. (*Id.*). She indicated that she felt pain in her right leg resulting in occasional numbness, that is bothered by all activity and relieved only with sitting. (*Id.*). She also reported having headaches every day that began in 2008 and had a pain intensity of 9/10. (*Id.*). On examination, Dr. Schwab found Plaintiff to appear in no acute distress; able to walk with a normal gait, squat to 30 percent, rise from a chair without difficulty, and stand with a normal stance; and require no assistive devices. (*Id.* at 424). Dr. Schwab diagnosed Plaintiff with backache and headache and opined that, "He [sic] has a moderate restriction to bending, lifting, and carrying heavy objects. He [sic] should avoid bright lights and loud noises." (*Id.* at 426).

In assessing Plaintiff's RFC, the ALJ gave the opinion of Dr. Schwab great weight, despite finding it vague with regard to moderate restriction. (Dkt. 6 at 26). The ALJ found Dr. Schwab's opinion to be "based on examination and program knowledge" and "consistent with the overall medical record." (*Id.*). The ALJ noted that the record did not

contain any opinions from treating or examining physicians indicating that Plaintiff is disabled or has limitations greater than those set forth in her RFC. (*Id.*).

Plaintiff first argues that Dr. Schwab's opinion was stale. "[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015). "A medical opinion may be stale if it does not account for the claimant's deteriorating condition." *Carney v. Berryhill*, No. 16-CV-269-FPG, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017). However, a medical opinion is not necessarily stale simply based on its age. A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age. *See Andrews v. Berryhill*, No. 17-CV-6368 (MAT), 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) (ALJ did not err in relying on dated opinions where there was no indication the plaintiff's "condition had significantly deteriorated after the issuance of . . . [the] opinions such that they were rendered stale or incomplete").

Here, following Dr. Schwab's examination, a lumbar spine MRI was conducted in November of 2016 that revealed Plaintiff had multilevel degenerative changes with spondylotic changes most pronounced at the L5-S1 level; multilevel bilateral facet joint effusions most pronounced at L3-L5 and to a lesser degree at L5-S1; and a nonspecific edema within her bilateral subcutaneous soft tissues, most pronounced between the L2 and L4 levels. (Dkt. 6 at 633-34). At a December 2016 appointment to review the MRI results, the possibility of Plaintiff being a candidate for lumbar spine surgery in the future was discussed. (*Id.* at 506). She continued to receive lumbar analgesic injections in 2017, and

trigger point injections for neck pain. (*Id.* at 501-02, 485). In March of 2018, her orthopedist referred her to pain management for additional analgesic injections, which she received. (*Id.* at 465). While Defendant points to other relatively benign findings following the issuance of Dr. Schwab's opinion, the updated MRI and continued treatment records do serve to suggest that Plaintiff's condition continued to deteriorate or was not resolving with treatment.

Moreover, in addition to the potential staleness of Dr. Schwab's opinion and the fact that it was the only opinion evidence in the record, the ALJ acknowledged that the opinion itself was vague. While "[a]n ALJ may rely on a non-examining state agency consultant's opinion when it is supported by other record evidence," *see Kelley S. v. Comm'r of Soc. Sec.*, No. 5:17-CV-1234 (ATB), 2019 U.S. Dist. LEXIS 21557, at *20 (N.D.N.Y. Feb. 11, 2019), here, by finding that Dr. Schwab's opinion was vague, it is unclear to the Court how the opinion of Dr. Schwab informed the assessed RFC, as the evaluation did not result in a clear assessment of Plaintiff's functional limitations.

Defendant essentially argues that the ALJ was not required to assess Plaintiff's RFC using medical opinion evidence and suggests that the ALJ appropriately considered that Plaintiff largely relied on conservative treatment for her limitations and together with her activities of daily living and treatment records, gave the ALJ ample information to determine her RFC. (Dkt. 9-1 at 24). In support of this argument, the Commissioner cites to *Monroe v. Colvin*, 676 F. App'x 5 (2d Cir. 2017). In *Monroe*, the ALJ rejected the treating physician's medical assessment, but relied on the physician's treatment notes in formulating the RFC. *Monroe*, 676 F. App'x 6-7. The Second Circuit held that this was

proper "[b]ecause the ALJ reached her RFC determination based on Dr. Wolkoff's contemporaneous treatment notes—while at the same time rejecting his post hoc medical opinion ostensibly based on observations memorialized in those notes—that determination was adequately supported by more than a mere scintilla of evidence." *Id*. at 8-9. Here, the record is devoid of any such assessment.

This case does not present the situation contemplated by *Monroe*, where the ALJ rejected the physician's medical assessment, but relied on the underlying treatment notes, which provided contemporaneous medical assessments relevant to the plaintiff's ability to perform sustained gainful activity. Here, the ALJ did not merely disagree with a medical assessment; rather, no acceptable medical source provided a clear opinion regarding Plaintiff's RFC, and there are no underlying documents supporting any such evaluation. *See Pellam v. Astrue*, 508 F. App'x 87, 90 n.2 (2d Cir. 2013) ("[W]e need not decide whether a record would be rendered incomplete by the failure to request a medical source opinion from a treating physician if the ALJ made his residual functional capacity determination without the support of any expert medical source opinion concerning the claimant's limitations."). While Plaintiff's conservative treatment, activities of daily living, and relatively benign diagnostic findings may have been appropriate considerations for the ALJ to consider, they do not serve as a substitute for opinion evidence.

The Court agrees with Plaintiff that the ALJ in this case erred in assessing Plaintiff's RFC in the absence of any material medical opinion. The Court is cognizant that "when the medical evidence shows only minor physical impairments," an ALJ may assess the RFC using "common sense judgment about functional capacity even without a physician's

assessment." *Jaeger-Feathers v. Berryhill*, No. 1:17-CV-06350(JJM), 2019 WL 666949, at *4 (W.D.N.Y. Feb. 19, 2019) (W.D.N.Y. Feb. 19, 2019) (quotations and citations omitted). This is not one of those cases. The ALJ identified multiple severe impairments, including migraine headaches, myofascial pain, radiculopathy lumbosacral region, and lumbar degenerative changes, in addition to numerous non-severe impairments, and assessed an RFC with both physical and mental components. (Dkt. 6 at 19).

Defendant further contends that it remains Plaintiff's burden to show disabling functional limitations, which is true. However, Plaintiff is not solely responsible for developing the record. It is well-established that an ALJ "has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996); *see also Calero v. Colvin*, No. 16 Civ. 6582 (PAE), 2017 WL 4311034, at *9 (S.D.N.Y. Sept. 26, 2017) (an ALJ has an independent duty to develop the record). Here, the lack of opinion evidence creates an obvious gap in the record, and "[i]t is considered reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." (quotation omitted). *See Falcon v. Apfel*, 88 F. Supp. 2d 87, 91 (W.D.N.Y. 2000). The ALJ was required to exercise her independent duty to develop the record and, at a minimum, secure a consulting physician to examine Plaintiff and render an opinion as to her functional limitations.

In sum, the ALJ concluded that Plaintiff had multiple severe impairments. Despite these impairments, the ALJ assessed an RFC without the benefit of any clear opinion evidence as to Plaintiff's functional limitations. This was error. On remand, the ALJ

should work to further develop the record to obtain medical opinion evidence addressing Plaintiff's functional limitations.

### B. Plaintiff's Remaining Arguments

To the extent Plaintiff identifies other reasons why she contends the ALJ's decision was not supported by substantial evidence, the Court need not reach those arguments because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary. *See, e.g., Samantha D. v. Comm'r of Soc. Sec.*, No. 3:18-CV-1280 (ATB), 2020 WL 1163890, at *10 (N.D.N.Y. Mar. 11, 2020) (declining to reach arguments concerning whether ALJ's findings were supported by substantial evidence where the court had already determined that remand was necessary as the ALJ failed to consider the opinion of treating physician, which was received in compliance with the Five Day Rule); *Raymond v. Comm'r of Soc. Sec.*, 357 F. Supp. 3d 232, 240-41 (W.D.N.Y. 2019) (declining to reach argument concerning whether RFC was supported by substantial evidence where the court had already determined the ALJ had erred at step three analysis in evaluating whether plaintiff had met the requirements under a listing).

### CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 7) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 9) is denied. The Clerk of Court is directed to enter judgment and close this case.

- 13 -

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: February 22, 2021
       Rochester, New York